## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
DISTRICT TITLE,                         )
                                        )
      Plaintiff,                         )
                                        )
    v.                                  )    Civil Action No. 14-1808 (ABJ)
                                        )
ANITA K. WARREN, *et al.*,              )
                                        )
      Defendants.                       )
_____)

### MEMORANDUM OPINION AND ORDER

Plaintiff District Title, a real estate settlement company, was handling the sale of a property formerly owned by defendant Anita K. Warren when it erroneously transferred $293,514.44 to Warren instead of to the mortgage lender, non-party Wells Fargo Bank, N.A.  Am. Compl. [Dkt. # 5] ¶ 15.  Warren promptly transferred the funds to her son Timothy Day, and the two refused to give the money back. *See District Title v. Warren*, No. 14-1808, 2015 WL 7180200, at *1 (D.D.C. Nov. 13, 2015).  On November 13, 2015, the Court granted summary judgment to plaintiff on a breach of contract count brought against Warren and an unjust enrichment count brought against Day. *See id.*  The Court entered judgment in favor of plaintiff in the amount of $293,514.44, plus pre-and-post judgment interest and attorneys' fees and costs, and it also entered a permanent injunction to enjoin defendants from dissipating their assets until the judgment was satisfied. Order (Nov. 13, 2015) [Dkt. # 79]; *see also* Order (Aug. 3, 2016) [Dkt. # 100] (amending the November 13, 2015 order to correct a clerical error).  The D.C. Circuit summarily affirmed the Court's judgment. *District Title v. Warren*, No. 15-7157, 2016 WL 3049558 (D.C. Cir. May 4, 2016).

On March 22, 2016, plaintiff filed a motion to conduct post-judgment discovery related to its efforts to collect on the judgment; it sought to depose Day,[1] and it sought court permission to serve subpoenas on three individuals, including counsel for defendants, Matthew LeFande.  *See* Mem. of P. & A. in Supp. of Pl.'s Mot. for Oral Examination of J. Debtor Timothy Day & Third Parties, & for Leave to Serve Subpoenas [Dkt. # 88-1].  Plaintiff asserted that it sought to issue a subpoena on LeFande because he "may have information concerning assets held or transferred by Timothy Day."  *Id.* at 5.

The Court referred the motion to a Magistrate Judge pursuant to Local Civil Rule 72.2(a). Order (Apr. 5, 2016) [Dkt. # 90].  Thereafter, the Court referred another post-judgment discovery matter to the same Magistrate Judge.  *See* Order (June 29, 2016) [Dkt. # 95] (referring plaintiff's motion for the issuance of Letters Rogatory to the Auckland High Court in Auckland, New Zealand); Mem. Op. & Order [Dkt. # 104] (granting the motion for the issuance of Letters Rogatory).

On April 21, 2017, plaintiff moved for an order to show cause as to why LeFande should not be held in contempt, and it renewed its request for leave to issue a subpoena to LeFande.  Pl.'s Mot. to Show Cause Why Timothy Day's Counsel Should Not be Held in Contempt & Renewed Request for Issuance of Subpoena to Matthew LeFande [Dkt. # 107] ("Pl.'s Mot.").  In support of its motion, plaintiff pointed to testimony in a related proceeding in a Maryland state court that LeFande was complicit in the concealment of defendant Day's assets.  Pl.'s Mem. of P. & A. in Supp. of Pl.'s Mot. [Dkt. # 107-1] ("Pl.'s Mem.") at 3.  Plaintiff proffers that Day transferred over $80,000 in profits received from a November 2014 sale of property in St. Mary's County, Maryland to an account in New Zealand.  *Id.*  At a trial related to the St. Mary's County transaction,

---

[1]      Day has since passed away.  *See* Suggestion of Death [Dkt. # 106].

a witness testified that it was Day's attorney, Matthew LeFande, who instructed the settlement company to transfer the funds to the New Zealand account. *Id.*

LeFande opposed the motion and sought a protective order. Opp. to Pl.'s Mot. & Request for Protective Order [Dkt. # 108] ("LeFande's Opp."). In his opposition, LeFande asserted his Fifth Amendment right against self-incrimination, and he also asserted that any testimony would be covered by the attorney-client privilege. *Id.*

In an opinion dated June 2, 2017, the Magistrate Judge granted plaintiff's motion for the issuance of a subpoena, denied LeFande's motion for a protective order, and stayed the request for a show cause order. Mem. Op. & Order [Dkt. # 110] ("Magistrate Judge's Opinion"). The Magistrate Judge concluded that LeFande's assertions of privilege were premature because LeFande would be required to assert the attorney-client and fifth-amendment privileges on a question-by-question basis. *Id.* at 8–9. On June 16, 2017, LeFande filed objections to the Magistrate Judge's order, and he renewed his request for a protective order. Obj. to Magistrate Judge's Op. & Request for Protective Order [Dkt. # 111] ("LeFande's Obj."). In that opposition, LeFande also contends that plaintiff violated D.C. Rule of Professional Conduct 8.4 by "seek[ing] or threaten[ing] to seek criminal charges or disciplinary charges solely to obtain an advantage in a civil matter." *Id.* at 11–12.[2] Plaintiff responded to the objections, Reply in Obj. to LeFande's Obj. [Dkt. # 112] ("Pl.'s Resp."), and LeFande did not file a reply. Because LeFande has not pointed

---

2    This argument is frivolous. Plaintiff has not sought criminal or disciplinary charges; it seeks contempt for counsel's alleged violations of the Court's orders. *See* Pl.'s Mot. As the D.C. Bar put it, in the context of a criminal contempt proceeding, "[t]o interpret Rule 8.4(g) to apply to such a proceeding would, effectively, make it a disciplinary violation for a lawyer to seek this particular remedy, a clearly illogical and anomalous result." D.C. Bar Ethics Op. 263, *Contacts with Persons Represented by Counsel; Application of Rule 8.4(g) to Criminal Contempt Proceedings* (Jan. 1996), http://www.dcbar.org/bar-resources/legal-ethics/opinions/opinion263.cfm.

to any clear error, and because the Magistrate Judge's opinion is not contrary to law, LeFande's objections will be overruled.

## STANDARD OF REVIEW

Local Civil Rule 72.2(a) permits a district court to refer "any pretrial motion or matter," with the exception of certain motions and petitions set forth in Local Civil Rule 72.3, to a Magistrate Judge.  *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 945 (D.C. Cir. 2017), quoting LCvR 72.2(a).[3]  If any party files written objections to a Magistrate Judge's ruling on such a matter, the District Court "may modify or set aside any portion of [the] order . . . found to be clearly erroneous or contrary to law."  LCvR 72.2(c).  "A court should make such a finding when the court 'is left with the definite and firm conviction that a mistake has been committed.'"  *New Life Evangelistic Ctr., Inc. v. Sebelius*, 847 F. Supp. 2d 50, 53 (D.D.C. 2012), quoting *Am. Soc'y for Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 21 (D.C. Cir. 2011).

---

3       The Court referred this matter to the Magistrate Judge under Local Civil Rule 72.2(a), and neither party has objected to that referral.  But it appears to be a matter of first impression in this jurisdiction whether a Magistrate Judge has the power to resolve post-judgment discovery issues.  In the Federal Magistrates Act, 28 U.S.C. § 636, Congress gave magistrate judges the authority "to hear and determine any pretrial matter pending before the court," 28 U.S.C. § 636(b)(1), and it also empowered district judges to assign to magistrate judges any "such additional duties as are not inconsistent with the Constitution and laws of the United States."  *Id.* § 636(b)(3).  Leading commenters have concluded that the Supreme Court's jurisprudence on the power of Magistrate Judges "[c]ertainly . . . can reach the assignment under section 636(b)(3) of posttrial matters comparable in importance to those section 636(b)(1) authorizes a magistrate judge to address before trial."  12 Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 3068.1 (2d ed. 1995); 14 *Moore's Federal Practice* § 72.02 (Matthew Bender 3d ed.) ("Discovery is a nondispositive pretrial matter that may be referred for disposition to a magistrate judge.  Postjudgment discovery in collection proceedings may also be referred to a magistrate judge.").  Because the management of post-judgment discovery is comparable in importance to the management of pretrial discovery, the Court will review the Magistrate Judge's opinion under the "clear error" standard.  The Court notes, however, that its decision would be the same whether it used the "clear error" standard, or whether it reviewed the Magistrate Judge's opinion *de novo* – there is ample support in the record, which the Court has reviewed in its entirety, for the Magistrate Judge's conclusions.

## ANALYSIS

LeFande challenges the Magistrate Judge's ruling on two grounds:  first, he argues that any testimony that would be sought from him would be protected by the Fifth Amendment privilege against self-incrimination, and second, he contends that any testimony would be protected by attorney-client privilege.  Because LeFande cannot assert these privileges to bar all questioning, the Court will overrule the objections.

## I.    LeFande must assert the self-incrimination privilege on a question-by-question basis.

LeFande argued before the Magistrate Judge that he would refuse to answer any questions about the St. Mary's County transaction, and he cited his Fifth Amendment privilege against self-incrimination.  LeFande's Opp. at 7.  The Magistrate Judge concluded that LeFande's blanket assertion of the self-incrimination privilege was premature.  The Magistrate Judge held:

> [N]o authority supports the proposition that the threat by a witness to claim such privileges is a basis upon which to preclude the issuance of a subpoena. Rather, the applicable authorities require that claims of such privileges be made in response to a specific question or questions actually posed, or specific documents actually requested.

Magistrate Judge's Opinion at 8–9. While LeFande asserts that "there are <u>no</u> questions the attorney will answer without asserting the [Fifth Amendment] privilege,"  LeFande Obj. at 9, he does not argue that the Magistrate Judge erred in any way.  Because the Court agrees with the Magistrate Judge's conclusion, LeFande's objection will be overruled.

The Fifth Amendment protects a person from being "compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  The privilege "can be asserted in any proceeding, civil or criminal . . . and it protects any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444–45 (1972).  The privilege may be invoked whenever a witness reasonably believes that his testimony could "furnish a link in the chain of

evidence needed to prosecute" him for a crime. *Hoffman v. United States*, 341 U.S. 479, 486 (1951). But the danger of self-incrimination must be real, not remote or speculative. *Zicarelli v. N.J. State Comm'n of Investigation*, 406 U.S. 472, 478 (1972). So, as the Supreme Court held more than sixty years ago, "[a]s to each question to which a claim of privilege is directed, the court must determine whether the answer to that particular question would subject the witness to a real danger of . . . [in]crimination." *Rogers v. United States*, 340 U.S. 367, 374 (1951).

Because a witness must have a reasonable belief that a disclosure could be used in a subsequent criminal proceeding, "[t]here is a presumption against blanket assertions of Fifth Amendment privilege," *United States v. McAllister*, 693 F.3d 572, 583 (6th Cir. 2012), and the law is clear that the privilege against self-incrimination must be asserted on a question-by-question basis. *See Anton v. Prospect Cafe Milano, Inc.*, 233 F.R.D. 216, 218 (D.D.C. 2006), citing *United States v. Argomaniz*, 925 F.2d 1349, 1355 (11th Cir. 1991); *see also, e.g.*, *Doe v. Glazner*, 232 F.3d 1258, 1263 (9th Cir. 2000) ("The only way the privilege [against self-incrimination] can be asserted is on a question-by-question basis, and thus, as to each question asked, the party has to decide whether or not to raise his Fifth Amendment right."); *Vazquez-Rijos v. Anhang*, 654 F.3d 122, 129 (1st Cir. 2011) (rejecting a litigant's argument that the Fifth Amendment privilege excused her from appearing at a deposition, holding that the "Fifth Amendment privilege 'cannot be invoked on a blanket basis'"), quoting *United States v. Castro*, 129 F.3d 226, 229 (1st Cir. 1997).

So LeFande must sit for the deposition, and while he may assert the Fifth Amendment privilege in response to particular questions as appropriate, he must answer questions with the understanding that the danger of self-incrimination must be real, not remote or speculative. *Zicarelli*, 406 U.S. at 478.

## II.     LeFande must assert the attorney-client privilege on a question-by-question basis.

LeFande argued before the Magistrate Judge that plaintiff's allegations of wrongdoing "cannot overcome any privilege in the communications between this attorney and either Defendant." LeFande's Opp. at 11. The Magistrate Judge rejected this blanket assertion of attorney-client privilege. Magistrate Judge's Opinion at 8–9. LeFande now argues that the Magistrate Judge's decision "flies in the face" of the Supreme Court's decision in *United States v. Zolin*, 491 U.S. 554, 565 (1989). LeFande's Obj. at 12. Because the Court concludes that the Magistrate Judge did not commit clear error, LeFande's objections will be overruled.

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Its purpose is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* The privilege "applies to a confidential communication between attorney and client if that communication was made for the purpose of obtaining or providing legal advice to the client." *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 757 (D.C. Cir. 2014). A party asserting the attorney-client privilege must demonstrate that:

(1)     The asserted holder of the privilege is or sought to become a client;

(2)     The person to whom the communication was made (a) is a member of the bar of a court or her subordinate and (b) in connection with this communication is acting as a lawyer;

(3)     The communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on the law; (ii) legal services; or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and

(4)     The privilege has been (a) claimed and (b) not waived by the client.

*In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984).   In short, the privilege covers communications, and not all acts undertaken on behalf of a client, and it does not cover communications that the attorney had with third parties.

The attorney-client privilege is "narrowly construed by the D.C. Circuit because of its adverse effects on the full disclosure of truth." *United States v. Philip Morris Inc.*, 212 F.R.D. 421, 424 (D.D.C. 2002).   Therefore, "[a] blanket assertion of the [attorney-client] privilege will not suffice.  Rather, [t]he proponent must conclusively prove each element of the privilege." *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998).

To support his blanket assertion of attorney-client privilege, LeFande relies on the Supreme Court's decision in *United States v. Zolin*, but that case is largely irrelevant to this dispute.  *See* LeFande Obj. at 12.  In *Zolin*, the Supreme Court was faced with the question of whether a district court could review documents *in camera* to determine whether those documents were privileged, or whether they were subject to the crime-fraud exception.  *Zolin*, 491 U.S. at 556–57.  The Supreme Court looked to Federal Rules of Evidence 104(a) and 1101(c),[4] and it concluded that it could "not interpret Rule 104(a) as categorically prohibiting the party opposing the privilege on crime-fraud grounds from relying on the results of an *in camera* review of the communications."

---

4       Rule 104(a) provides that "[p]reliminary questions concerning . . . the existence of a privilege . . . shall be determined by the court," Fed. R. Evid. 104(a), and Rule 1101(c) provides that "[t]he rule with respect to privileges applies at all stages of all actions, cases, and proceedings." Fed. R. Evid. 1101(c).

*Id.* at 568.  But no party has asked the Court to review documents *in camera* to establish whether the elements of the crime-fraud exception have been met, so *Zolin* is inapposite.[5]

It would not invade the attorney client privilege to ask Mr. LeFande about his alleged role in the transfer of funds to New Zealand and any actions he took or instructions he provided to third parties to that end.  Because the deposition will not necessarily inquire into privileged matters, and because the Court finds no clear error in the Magistrate Judge's ruling requiring LeFande to sit for a deposition and assert any applicable privileges in response to particular questions, as appropriate, LeFande's objections will be overruled.[6]

## CONCLUSION

For those reasons, it is hereby

**ORDERED** that Matthew LeFande's objections to the Magistrate Judge's Opinion are **OVERRULED**.

**SO ORDERED**.

_____
AMY BERMAN JACKSON
United States District Judge

DATE:  July 14, 2017

---

5       LeFande also argues that it would "offend[] Rule 1" of the Federal Rule of Civil Procedure to sit for a deposition at which he will "recite the same objections," and thereafter be brought "back to the Court for consideration of the very same privileges already asserted herein."  LeFande's Obj. at 12.  But the law does not permit LeFande to make a blanket assertion of privilege, and the Court will be in a better position to determine whether particular questions call for privileged responses when it has the precise questions before it.

6       LeFande also raises equitable concerns as to whether post-judgment discovery on the St. Mary's County matter is appropriate.  LeFande's Opp. at 15–16.  The Court referred the post-judgment discovery matters to the Magistrate Judge, Order [Dkt. # 90] (Apr. 5, 2016); Order [Dkt. # 95] (June 29, 2016), so those concerns are better directed at the Magistrate Judge in the first instance.